

**SO ORDERED,**

**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| KEVIN O'CONNER FREEMAN, | ) | Case No.:   20-12124-JDW |
| | ) | |
| Debtor. | ) | Chapter 7 |

| | | |
|---|---|---|
| WILLIAM L. FAVA, as Trustee for the Estate of Kevin O'Conner Freeman, | ) ) ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) | A.P. No.:   24-01002-JDW |
| | ) | |
| LESLEE L. FREEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

This adversary proceeding came before the Court for trial by videoconference on February 25, 2026, on the *Complaint for Turnover of Property of the Estate [11 U.S.C. § 542]*[2] filed by the plaintiff William L. Fava, as trustee for the bankruptcy estate of the debtor, Kevin O'Conner Freeman, against non-debtor defendant Leslee L. Freeman, the debtor's estranged spouse. Brandon J. Iskander represented the trustee at trial and the defendant appeared pro se. The Court heard testimony and admitted documents into evidence.[3]

The defendant would be a stranger to this bankruptcy case but for this adversary proceeding. The trustee seeks a judgment under 11 U.S.C. § 542 requiring the defendant to turn over community property consisting of a home in California where she has resided since 2006. The defendant and the debtor have been separated, but not divorced, for over fourteen years. The defendant has lived in and maintained the home since it was purchased in 2006, while the debtor has lived in Mississippi with another woman since 2018. This

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7052. To the extent any finding of fact is construed to be a conclusion of law, or vice versa, it is adopted as such.

[2] (A.P. Dkt. # 1). Citations to (A.P. Dkt. # --) refer to docket entries in this adversary proceeding (A.P. No. 24-01002-JDW). Citations to (Bankr. Dkt. # --) refer to docket entries in the underlying bankruptcy case (Case No. 20-12124-JDW).

[3] The parties stipulated to the admission of Plaintiff's Ex. Nos. 1-17 and those documents were admitted into evidence.

adversary proceeding is an effort by the trustee to obtain possession of the home and ultimately sell it. The home is community property under California law, and the trustee seeks to liquidate it to pay claims in the debtor's bankruptcy case.

The Court has considered the evidence and applicable law and concludes that turnover is not warranted for the reasons set forth herein and in the Court's Memorandum Opinion and Order Denying Motion for Summary Judgment.[4] The trustee has failed to meet his burden to show that the property is not of inconsequential value or benefit to the estate under § 542 of the Bankruptcy Code.[5] The payout to creditors, which is governed by § 726, is miniscule, while the costs to achieve that payout are high. Further, the only payments that could be made are to secured creditors, who are protected by their liens and may enforce their own rights outside of bankruptcy. The unsecured creditors that the trustee is charged with providing for would receive no distribution.

## I.    JURISDICTION

As set forth more fully in its summary judgment opinion,[6] this Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a), and 1334, and by Local Rule

---

[4] (A.P. Dkt. # 16).

[5] "Bankruptcy Code" refers to 11 U.S.C. §§ 101-1532. Unless otherwise noted, all statutory references herein are to the Bankruptcy Code.

[6] (A.P. Dkt. # 16 at 6-10).

83.6 of the Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi. The Court previously analyzed and established the propriety of jurisdiction and venue in that opinion and order, which is now law of the case.[7] Specifically, the Court concluded that because it has jurisdiction over all property of the bankruptcy estate, wherever located, it has jurisdiction over the home in California.[8]  Further, the Court determined that venue is proper under 28 U.S.C. § 1408 because the debtor had resided in Mississippi for more than 180 days before the petition date.[9]  Finally, the Court concluded that it has the constitutional power to enter a final judgment in this core proceeding because the trustee's claims "flow directly from [the] federal statutory scheme" provided in § 542 of the Bankruptcy Code and impact both property of the estate and claims filed in the bankruptcy case.[10]

---

[7] *Southstar Holdings, LLC v. Crest Energy Partners, GP, LLC (In re Crescent Trading LLC)*, 654 B.R. 246, 252-53 (Bankr. S.D. Tex. 2023) ("Under the law-of-the-case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'"); (A.P. Dkt. # 16 at 6-10).

[8] 28 U.S.C. § 1334(e)(1) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."); (A.P. Dkt. # 16 at 6-7).

[9] 28 U.S.C. § 1408; (A.P. Dkt. # 16 at 7).

[10] *Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 850 (Bankr. S.D.N.Y. 2013) ("[T]he reported post-*Stern* decisions have overwhelmingly held that bankruptcy judges can constitutionally enter final judgments in turnover actions."); (A.P. Dkt. # 16 at 7-8).

4

## II.   FACTS AND RELEVANT PROCEDURAL HISTORY

Pursuant to the joint pre-trial order submitted by the parties and entered by the Court, the parties agreed, "The following facts are established by the pleadings, by stipulation, by court order, or by admission."[11]   The stipulated facts are reproduced below verbatim:

    a.  Debtor Kevin O'Conner Freeman filed his chapter 7 bankruptcy petition on June 22, 2020 ("Petition Date").

    b.  His voluntary petition provides that he lives in Water Valley, Mississippi, located in the Northern District of Mississippi.

    c.  The Court previously found that the debtor had lived in this district longer than any other district during the 180 days prior to filing the petition, thus making him eligible to file in Mississippi.

    d.  Along with the petition, the debtor filed Schedule A/B, which listed real property located at 33277 Kabian Court in Temecula, California (the "Property").

    e.  The trustee, as plaintiff, now seeks turnover of the Property from the defendant, so that the non-exempt asset can be sold to pay the debtor's creditors.

    f.  On May 25, 2006, the debtor and the defendant took title to the Property as "Husband and Wife as Joint Tenants."   The Property is encumbered by a deed of trust securing a promissory note in the original principal amount of $375,000. No additional deeds of trust or refinancing was obtained by either Debtor or Defendant since the May 25, 2006 acquisition date.

    g.  As of October 2024, the Court found that the fair market value of the Property was at least $620,000, with significant non-exempt equity of at least $373,000.

    h.  The Property is the only non-exempt asset of meaningful value in the bankruptcy case.

---

[11] (A.P. Dkt. # 49).

   i. The Debtor and the Defendant are not divorced.

   j. Debtor and defendant separated on August 1, 2012 as defendant admitted in her November 8, 2022 Petition for Dissolution (Divorce) of Marriage filed in Freeman & Freeman, Case No. FLHE2206385 before the Superior Court of California, County of Riverside ("Riverside Superior Court" or "Family Court").

   k. Debtor and Defendant have no minor children. The regular monthly mortgage payment for the Property is $1,480.54.

   l. As of March 8, 2023, the mortgage payments for the Property were in arrears of $5,203.64.

   m. Three claims have been filed and/or scheduled in the bankruptcy case. Capital One Bank (USA), N.A. filed a claim for $357.35 for a credit card. That proof of claim provides that the revolving credit card account was opened on December 5, 2016, but there is no indication of when the outstanding $375.35 debt was incurred. The statement attached to that proof of claim lists only the debtor as an account holder.

   n. Foremost Insurance Company filed a claim for $83,382.41, the basis of which is a judgment entered by a Mississippi state court. That judgment was entered on February 11, 2019, and is also against the debtor only.[12]

In addition to the stipulated facts, the Court reiterates its prior pertinent findings.

In its prior opinion and order[13] sustaining the trustee's objection to the debtor's exemptions,[14] the Court found that the debtor had long ago separated from the defendant with no intention of returning to reside in the Property.[15] The Court also adopts its findings in that same opinion that the defendant

---

[12] (A.P. Dkt. # 49).

[13] (Bankr. Dkt. # 43).

[14] (Bankr. Dkt. # 30). No appeal was taken and that order became final.

[15] (Bankr. Dkt. # 43 at 2).

lived in the Property with their children, while the debtor had resided in Mississippi since January 2, 2018, where he lived with his girlfriend and her two children.[16]

The Court makes additional findings regarding the equity in the Property, taking into account secured tax claims, the mortgage, and the Property's value, as follows:

The third claim filed in the bankruptcy case, which was mentioned but otherwise unaddressed by the parties in their stipulated facts, is a $7,140.38 tax claim filed by the California Franchise Tax Board for the tax years 2011, 2012, and 2013.[17]  In its Proof of Claim No. 3-1, the taxing authority filed the 2011 and 2012 tax claims as secured claims, and the 2013 tax claim as unsecured.  Including penalties, interest and costs, the unpaid taxes for each of these years amount to $3,026.21, $1,804.90, and $2,309.27, respectively.[18] No party has contested the amounts claimed or the secured status of the 2011 and 2012 tax claims.[19]  Further, the parties stipulated to the admission of two Notices of State Tax Liens recorded by the taxing authority that encumber the

---

[16] (Bankr. Dkt. # 43 at 2).

[17] (Claim # 3-1); (Plaintiff's Ex. Nos. 7-9).

[18] (Claim # 3-1); (Plaintiff's Ex. Nos. 7-9).

[19] A proof of claim is deemed allowed as filed absent an objection. 11 U.S.C. § 502(a). The chapter 7 trustee testified at trial that he investigated the validity of all three proofs of claim filed in the bankruptcy case. (A.P. Dkt. # 62 at 41-45). No objections were filed to any of the proofs of claim.

Property for the outstanding tax claims.[20]  The debtor is the only person named as the taxpayer on the Notices of State Tax Liens.[21]

The Court accepts the expert testimony of the trustee's appraiser and finds that the fair market value of the Property, as of July 17, 2025, was $745,000.  In addition to the secured tax claims, the Property is encumbered by a mortgage.[22]  As of March 8, 2023, the balance of the mortgage debt was $246,693.16.[23] More recent figures for the fair market value or the outstanding balance were not presented to the Court.  Based on this imperfect record, the Court finds there is approximately $500,000.00 of equity in the Property.

## III.   CONCLUSIONS OF LAW

The trustee seeks turnover of the Property, which is governed by § 542 of the Bankruptcy Code.  As the party seeking turnover, the trustee bears the burden of proving that the elements for turnover have been met by a preponderance of the evidence.[24]  Section 542 provides, in pertinent part:

---

[20] (Plaintiff's Ex. Nos. 8-9).
[21] (Plaintiff's Ex. Nos. 8-9).
[22] The mortgage company did not file a proof of claim in the bankruptcy case, but this secured claim would have to be paid if the Property were sold in order to convey clear title.
[23] (Plaintiff's Ex. No. 17).
[24] *See In re Donnell*, 357 B.R. 386, 396 (Bankr. W.D. Tex. 2006) ("At base, this is a turnover action brought under section 542(a). The burden of proof in such an action lies with the party seeking turnover. . . . [I]t logically follows that the party seeking turnover bears the burden of presenting evidence . . . by a preponderance . . . .") (citing *Turner v. Avery*, 947 F.2d 772, 774 (5th Cir. 1991) ("Of critical importance in the case at bar is the assignment of the burden of proof. The matter at bar qualifies as a turnover action. As the representative of the bankruptcy estate in a turnover action the trustee has the burden of proving the partnership interest . . . .")).

> (a) . . . an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.[25]

To satisfy his burden, the trustee must prove each of the following elements: (1) the property is in the possession, custody, or control of a non-custodial third party; (2) the property constitutes property of the estate; (3) the property is a type that the trustee could use, sell, or lease pursuant to § 363; and (4) the property is not of inconsequential value or benefit to the estate.[26]

At the summary judgment stage, the Court found that the trustee had met its burden on the first three elements.[27]  The Court noted that the only element remaining for trial was whether the Property was of inconsequential value or benefit to the estate.  For clarity and completeness, the Court's findings and conclusions as to the four elements are restated and refined below.

## A. The Property is in the possession, custody, or control of a non-custodial third party.

The parties do not dispute that the defendant is a non-custodial third party in possession of the Property.[28]  The defendant resides in the Property in

---

[25] 11 U.S.C. § 542(a).
[26] *Id.*; *In re Vasser*, 648 B.R. 829, 831 (Bankr. N.D. Miss. 2023).
[27] (A.P. Dkt. # 16 at 10-18).
[28] *See* (A.P. Dkt. ## 1, 4).

9

California,[29] and the debtor resides in Mississippi.[30]  Also, the defendant does not fall within the definition of a custodian of the debtor's property.  The Bankruptcy Code defines the term custodian to mean:

> (A) receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title;
>
> (B) assignee under a general assignment for the benefit of the debtor's creditors; or
>
> (C) trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.[31]

The defendant does not meet any of these foregoing definitions and is therefore a noncustodial third party in possession of the Property.[32]  The trustee has met the first element for turnover.

### B. The Property is property of the estate.

Upon the filing of a bankruptcy petition, the Bankruptcy Code creates an estate.[33]  Section 541(a) of the Bankruptcy Code provides that property of the estate includes, *inter alia*, "(1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case."[34]  This includes:

> All interests of the debtor and the debtor's spouse in *community property* as of the commencement of the case that is—(A) under

---

[29] (A.P. Dkt. # 4, ¶10).
[30] (Bankr. Dkt. # 45).
[31] 11 U.S.C. § 101(11).
[32] *Id.*
[33] *Id.* § 541(a).
[34] *Id.*

the sole, equal or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is liable.[35]

"The purpose of Section 541(a)(2) is 'to pass to the bankruptcy estate the community property which would otherwise be available under applicable state law for the satisfaction of claims against the debtor.'"[36]

While the determination of whether a debtor's interest in property constitutes property of the estate is a question of federal law, "Property interests held by a debtor at the time of filing are determined by reference to state law."[37] "The term 'community property' is not defined in the Bankruptcy Code, but it is a 'term of art referring to that certain means of holding marital property in those states which have adopted a community property system.'"[38] "The ultimate characterization of property as either community or separate is determined by applicable state law, and that determination establishes what interest, if any, the bankruptcy estate has in the property."[39] Because the Property is located in California and the debtor and defendant obtained their

---

[35] *Id.* § 541(a)(2) (emphasis added).

[36] *In re Hamlin*, 411 B.R. 310, 312 (Bankr. W.D. La. 2009) (quoting 5 Collier on Bankruptcy, ¶ 541.13[1] (15th ed. 2007)). As discussed later, community property is segregated from other property of the estate for distribution purposes.

[37] *In re Williams*, No. 19-32784, 2021 WL 1289672, at *8 (Bankr. S.D. Tex. Apr. 6, 2021); *see also Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

[38] *In re Trammell*, 399 B.R. 177, 182 (Bankr. N.D. Tex. 2007) (quoting *Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 859 (5th Cir. 2000)).

[39] *In re Robertson*, 203 F.3d at 859 (citation omitted).

interest under California law, this Court applies California law to determine the bankruptcy estate's interest in the Property.[40]

Under California law, real property acquired by either spouse during the marriage is community property.[41]  A married couple's separation does not change that status, and married persons may only "change—i.e., transmute— the character of property from community to separate, or vice versa, if the transmutation is 'made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected.'"[42]  That has not happened here.

The debtor and the defendant purchased the property in 2006, during their marriage, and as the deed clearly indicates, they took title as husband and wife.  Though they have been separated since August 1, 2012, and the defendant has filed a petition for divorce in California, they are not yet divorced and any related property division is stayed by the bankruptcy case.[43]  "For

---

[40] *Croft v. Lowry (In re Croft)*, 737 F.3d 372, 374-75 (5th Cir. 2013).

[41] Cal. Fam. Code § 760 ("Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."); Cal. Fam. Code § 1102(a) ("[E]ither spouse has the management and control of the community real property . . . both spouses, either personally or by a duly authorized agent, are required to join in executing an instrument by which that community real property or an interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered.").

[42] *In re Brace*, 470 P.3d 15, 20 (2020) (quoting Cal. Fam. Code § 852(a)).

[43] *In re Secrest*, 453 B.R. 623, 627 (Bankr. E.D. Va. 2011) ("While § 362(b)(2) broadly removes domestic relations matters from the automatic stay, equitable distribution matters concerning property of the estate are excluded from the exception and may not proceed."); (A.P. Dkt. # 49 at 8 ¶ "j").

purposes of § 541(a)(2), all community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate."[44] Accordingly, the Property became property of the bankruptcy estate when the bankruptcy case was filed.[45]

Further, the Court has disallowed the debtor's homestead exemption on the Property for the reasons explained in the prior opinion sustaining the trustee's objection.[46]  At summary judgment, the Court again held that the defendant has no right to claim the debtor's homestead exemption (and that doing so would be futile), nor does she have the right to claim her own exemption in the Property.[47]  The Property is community property not subject to an exemption, so it remains property of the bankruptcy estate.  The trustee has satisfied the second turnover element.

---

[44] *Dumas v. Mantle (In re Mantle)*, 153 F.3d 1082, 1085 (9th Cir. 1998); *see also Miller v. Walpin (In re Miller)*, 167 B.R. 202 (Bankr. C.D. Cal. 1994) (holding that all community property of a divorcing couple was property of the bankruptcy estate where division of the community property had not occurred as of the date the bankruptcy was filed).

[45] *In re Robertson*, 203 F.3d at 861 ("[C]ommunity property which has not been legally divided as of the commencement of the bankruptcy case passes to the debtor's estate.") (citation omitted). Of course, even if the Property was not community property and the debtor held only a separate interest, that interest would also be property of the estate. 11 U.S.C. § 541(a)(1); *see also In re Eisner*, No. 05-44474, 2007 WL 2479654, at *6 n.4 (Bankr. E.D. Tex. Aug. 28, 2007) (noting that a debtor's interest in entireties property becomes property of the bankruptcy estate).

[46] (Bankr. Dkt. # 43).

[47] *In re McCombs*, No. 06-35891, 2007 WL 4411909, at *7 (Bankr. S.D. Tex. Dec. 17, 2007) ("Courts have interpreted [§ 522(b)] to mean that only a debtor, and not the non-debtor spouse, has the authority to elect exemptions."), *rev'd on other grounds*, 659 F.3d 503 (5th Cir. 2011); *In re Duncan*, 294 B.R. 339, 344 (B.A.P. 10th Cir. 2003) ("[T]he Bankruptcy Code makes no provision for a non-debtor to claim an exemption from the estate."); *In re Homan*, 112 B.R. 356, 359 (B.A.P. 9th Cir. 1990) (holding that the right to claim exemptions in community property vests solely in the spouse who filed bankruptcy); (A.P. Dkt. # 16 at 16).

### C. The Property is of the kind that the trustee could sell.

Section 363 provides, "The trustee . . . may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ."[48]  As property of the estate, the Property is of the kind that the trustee may sell under § 363, and there is no provision in § 363 that would exempt the Property from sale.[49] "A chapter 7 trustee is a fiduciary of the estate whose principal duty is to administer estate property so as to maximize distribution to unsecured creditors, whether priority or general unsecured."[50]  Specifically, § 704 charges the trustee with the duty to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."[51]  In order to facilitate the trustee's efforts, § 363 authorizes a trustee to sell property of the estate so that the proceeds may be distributed to the debtor's unsecured creditors.[52]

The Property is not exempt, has substantial equity, and there is a market for this asset.  The trustee has satisfied the third turnover element.

---

[48] 11 U.S.C. § 363(b).

[49] *Id.* § 363.

[50] *In re All Island Truck Leasing Corp.,* 546 B.R. 522, 532 (Bankr. E.D.N.Y. 2016).

[51] 11 U.S.C. § 704(a)(1).

[52] *See Jubber v. Bird* (*In re Bird),* 577 B.R. 365, 375 (B.A.P. 10th Cir. 2017) (citing *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015)).

### D. The trustee has failed to meet his burden to prove the Property is not of inconsequential value or benefit to the estate.

"Section 542 carves out exceptions to the turnover command, and § 542(a) by its terms does not mandate turnover of property that is 'of inconsequential value or benefit to the estate.'"[53]  And that is the test, despite all the trustee's protestations.  The focus is not whether the Property has value, it clearly does here, but whether that value is inconsequential *to the estate*.[54]  The trustee had the burden at trial to demonstrate that the Property is not of inconsequential value or benefit to the estate.[55]  The trustee failed to meet that burden.

"There is no single test to determine whether property is of greater than inconsequential value."[56]   Instead, courts consider the unique facts and circumstances of each case.  For example, "One method noted by courts is to compare the amount of claims filed in a debtor's bankruptcy case to the value of the property that the trustee seeks to recover."[57]  Other courts require a showing that some method of sale holds a reasonable prospect of a meaningful recovery in excess of the debtor's exemption in the asset.[58]

---

[53] *City of Chicago v. Fulton*, 592 U.S. 154, 160 (2021).

[54] 11 U.S.C. § 542(a).

[55] *Id.*; *see also In re Vasser*, 648 B.R. 829, 832 (Bankr. N.D. Miss. 2023).

[56] *In re Brizinova*, 592 B.R. 442, 463 (Bankr. E.D.N.Y. 2018).

[57] *Id.* (citing *Calvin v. Wells Fargo Bank, N.A. (In re Calvin)*, 329 B.R. 589, 598 (Bankr. S.D. Tex. 2005)).

[58] *In re Burgio*, 441 B.R. 218, 221 (Bankr. W.D.N.Y. 2010).

This element is more complicated when the turnover target is community property. Unlike property of the estate solely owned by the debtor that can be used to satisfy any claims against the debtor, community property can only be liquidated to satisfy a relatively small universe of claims.

"While Section 541(a)(2) places community property in the hands of the trustee, he cannot hold it in a vacuum. Section 726 limits the creditor constituency for which the community property is held. If there is no such constituency, it serves no purpose for the trustee to deal with the property."[59] Section 726(c) provides for a special distribution scheme from the proceeds of community property; therefore, community property may only be sold to pay particular claims.[60] Specifically, § 726(c) provides that community property "shall be segregated from other property of the estate" into a separate sub-estate.[61] Proceeds from that community property are distributed in descending priority as detailed in subsections (A) through (D) of § 726(c).[62] After administrative expenses are paid "as the interest of justice requires" from all property of the estate,[63] claims are paid from community property as follows:

---

[59] *In re Merlino*, 62 B.R. 836, 840 (Bankr. W.D. Wash. 1986).

[60] *Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 863 (5th Cir. 2000) (explaining § 726(c)).

[61] 11 U.S.C. § 726(c).

[62] *In re Robertson*, 203 F.3d at 863 (explaining § 726(c)). For convenience herein, these are referred to as Sub-estates (A), (B), (C), and (D), corresponding with the respective subsections.

[63] 11 U.S.C. § 726(c)(1). Here, the Property is the only non-exempt asset of any value (A.P. Dkt. # 49 at 8 ¶ "h"), which means all administrative costs would be paid from the equity in the community property.

(A) First, community claims against the debtor or the debtor's spouse shall be paid from property of the kind specified in section 541(a)(2) of this title, except to the extent that such property is solely liable for debts of the debtor.

(B) Second, to the extent that community claims against the debtor are not paid under subparagraph (A) of this paragraph, such community claims shall be paid from property of the kind specified in section 541(a)(2) of this title that is solely liable for debts of the debtor.

(C) Third, to the extent that all claims against the debtor including community claims against the debtor are not paid under subparagraph (A) or (B) of this paragraph such claims shall be paid from property of the estate other than property of the kind specified in section 541(a)(2) of this title.

(D) Fourth, to the extent that community claims against the debtor or the debtor's spouse are not paid under subparagraph (A), (B), or (C) of this paragraph, such claims shall be paid from all remaining property of the estate.[64]

"The first sub-estate pays all community claims—including community claims assertable against the non-debtor spouse. The [sub-estate] consists only of Section 541(a)(2) property excluding property that is solely liable for debts of the debtor."[65]  In other words, Sub-estate (A) community claims are community claims incurred by both spouses or just the non-filing spouse.  If any money is left after payment of community claims in Sub-estate (A), Sub-estate (B) community claims are paid, which are "only community claims assertable against the debtor."[66]  The important statutory mandate is that

---

[64] 11 U.S.C. § 726(c)(2)(A)-(D).

[65] *In re Whitus*, 240 B.R. 705, 710 (Bankr. W.D. Tex. 1999).

[66] *Id.*

Sub-estates (A) and (B) only pay community claims and only from community property.

Turning to Sub-estate (C), the plain language of § 726(c)(2)(C) explicitly excludes community property in that it directs any remaining claims against the debtor to be paid from property of the estate that is not community property.[67]  Here, there are no other assets with any value to pay any claims.[68]

Sub-estate (D) then directs payment of all remaining community claims from all remaining property of the estate. But as with Sub-estates (A) and (B), Sub-estate (D) proceeds can only be used to pay community claims.

This is the prism through which the Court must examine the final turnover element.  To begin, there is one asset of any value in the bankruptcy estate.  It is the Property, which is community property,[69] and is thus excluded from paying any claims that fall within § 726(c)(2)(C), which can only be paid from non-community property.  There is no non-community property of any value in this estate, so the Sub-estate (C) analysis ends here.  The Property is therefore potentially available to satisfy only community claims under Sub-estates (A), (B), or (D).

---

[67] 11 U.S.C. § 726(c)(2)(C).
[68] (A.P. Dkt. # 49 at 8 ¶ "h").
[69] (A.P. Dkt. # 49 at 8 ¶ "h").

The § 726(c) distribution scheme toggles between the concepts of "community claims" and "community property."  The references in each subsection are critical here.  The Court has already concluded that the Property is community property and constitutes property of the estate.[70]  The Court next considers the concept of "community claims."

A "community claim" is a "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title [i.e. community property] is liable, whether or not there is any such property at the time of the commencement of the case[.]"[71] "This definition is keyed to the liability of the debtor's property for a claim against either the debtor or the debtor's spouse.  If the debtor's property is liable for a claim against either, that claim is a 'community claim.'"[72]

There are only three claims in the bankruptcy case.  Whether those claims are community claims turns on California state law.[73]  In California, "the community estate is liable for a debt incurred by either spouse before or during marriage."[74]  The phrase "'[d]uring marriage' . . . does not include the

---

[70] *See supra* pp. 10-13.

[71] 11 U.S.C. § 101(7).

[72] *In re Sweitzer*, 111 B.R. 792, 793 (Bankr. W.D. Wis. 1990) (quoting H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) at 308-324, U.S. Code Cong. & Admin. News 1978 at 5787).

[73] *In re Merlino*, 62 B.R. 836, 840 (Bankr. W.D. Wash. 1986) (granting summary judgment and precluding a creditor from distribution because the estate contained only community property and the creditor was not entitled to recover from the community property under state law).

[74] Cal. Fam. Code § 910.

period after the date of separation . . . and before a judgment of dissolution of marriage or legal separation of the parties."[75]   There has been no marital dissolution here, but there has been a separation.  In California, the "date of separation":

> means the date that a complete and final break in the marital relationship has occurred, as evidenced by both of the following:
>> (1) The spouse has expressed to the other spouse the intent to end the marriage.
>>
>> (2) The conduct of the spouse is consistent with the intent to end the marriage.[76]

The parties stipulated that the date of separation was August 1, 2012.[77]  That separation date precludes any claims arising after that date from being designated as community claims that can be paid under the distribution waterfall in subsections 726(c)(2)(A), (B), or (D).

> 1.  *A fraction of the claims are community claims which could possibly be paid from proceeds of the sale of the Property.*

Three claims have been filed and/or scheduled in this case: (1) the $357.35 claim of Capital One Bank for credit card debt, (2) the $83,382.41 claim of Foremost Insurance Company evidenced by a Mississippi state court

---

[75] *Id.*

[76] *Id.* § 70.

[77] (A.P. Dkt. # 49, at 8 ¶ "j").

judgment entered on February 11, 2019, and (3) the $7,140.38 aggregate tax

claim for the years of 2011-2013, filed by the California Franchise Tax Board.[78]

> a) Claim 1-1 of Capital One Bank (USA), N.A., is not a community claim.

Beyond the stipulation, the parties did not present any evidence to show

when the $357.35 credit card debt to Capital One was incurred, but the parties

agree that the revolving credit card account was not opened until December 5,

2016, more than four years after the separation date.[79]   The statement

attached to that proof of claim lists only the debtor as an account holder, which

is consistent with the stipulated facts.[80]  Claim 1-1 is not a community claim

because the debtor is the sole obligor on the debt to Capital One and it was

incurred no earlier than December 5, 2016.  As a non-community claim, Claim

1-1 may not be paid from proceeds of the sale of the Property under the

distribution waterfall in subsections 726(c)(2)(A), (B), or (D).

> b) Claim 2-1 of Foremost Insurance Company is not a community claim.

Foremost Insurance Company's claim for $83,382.41 was also not

incurred until after the debtor and defendant separated.  The basis for the

---

[78] The proofs of claim were admitted into evidence, but the Court may also take judicial notice of the claims register. *See PNC Bank, Nat'l Assoc. v. Ruiz*, No. 22-50584, 2023 WL 3340078, at *4 (5th Cir. May 10, 2023) (holding that under § 107, a "district court did not err in taking judicial notice" of bankruptcy records as "all papers filed in a bankruptcy case and the dockets of a bankruptcy court are public records except for certain limited, unrelated exceptions").
[79] (Claim # 1-1); (Plaintiff's Ex. No. 5); (A.P. Dkt. # 49 at 8 ¶ "m").
[80] (Claim # 1-1); (Plaintiff's Ex. No. 5); (A.P. Dkt. # 49 at 8 ¶ "m").

claim is a judgment entered by a Mississippi state court on February 11, 2019, for damages resulting from a fire occurring on May 30, 2016.[81]  Even using the earlier date of the injury, the debt was not incurred until almost four years after the separation.   Further, the judgment is against only the debtor.[82] Accordingly, Claim 2-1 is also not a community claim and may not be paid from proceeds of the sale of the Property under the distribution waterfall in subsections 726(c)(2)(A), (B), or (D).

> c)  <u>Only a portion of Claim 3-1 of the California Franchise Tax
> Board is a community claim.</u>

The third claim is a $7,140.38 aggregate tax claim for the years 2011 to 2013, filed by the California Franchise Tax Board.[83]  The tax claims are secured by the Property as evidenced by the recorded state tax liens.[84]   Because the separation date/community claim cutoff falls within these tax years, each tax year must be examined independently.

Including penalties, interests and costs, the 2011 taxes total $3,026.21.[85] The 2011 taxes are a community claim under California law because they were incurred during the marriage (i.e., before the August 1, 2012, separation

---

[81] (Claim # 2-1); (Plaintiff's Ex. No. 6); (A.P. Dkt. # 49 at 8 ¶ "n").
[82] (Claim # 2-1); (Plaintiff's Ex. No. 6); (A.P. Dkt. # 49 at 8 ¶ "n").
[83] (Claim # 3-1); (Plaintiff's Ex. No. 7).
[84] (Plaintiff's Ex. Nos. 8-9).
[85] (Claim # 3-1); (Plaintiff's Ex. No. 7).

date).[86]  This $3,026.21 could therefore possibly be paid from the proceeds of the sale of the community Property.

The 2013 taxes total $2,309.27.[87]  The 2013 tax claim was incurred after the date of separation, and only the debtor is named as the delinquent taxpayer.[88]  Thus, the 2013 portion of the tax claim is not a community claim and cannot be paid from proceeds of the sale of the Property.

The 2012 taxes total $1,804.90.[89]  The 2012 taxes are more complicated given the timing of the separation.  Under California community property law, each spouse is taxed on half of all income received during the marriage, regardless of which party has actually earned it.[90]  California law specifically provides that "the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt."[91]  But the "earnings and accumulations of a spouse . . . after the date of separation of the spouses, are the separate property of the spouse."[92]  As such, earnings after

---

[86] Cal. Fam. Code § 70.
[87] (Claim # 3-1); (Plaintiff's Ex. No. 7).
[88] (Plaintiff's Ex. No. 9).
[89] (Claim # 3-1); (Plaintiff's Ex. No. 7).
[90] Cal. Rev. & Tax. Code § 19006; Cal. Fam. Code §§ 760, 770.
[91] Cal. Fam. Code § 910.
[92] *Id.* § 771(a).

separation are taxable exclusively to the earning party.[93]  Therefore, the 2012

income earned prior to August 1, 2012, is considered joint income and may be

taxed to both, while each spouse's income earned after August 1st generates a

separate tax liability of only that spouse.  The portion of the 2012 tax claim

incurred before August 1, 2012, could possibly be paid from the sale of the

Property.

The trustee does not dispute that the community claims in this case are

limited to the 2011 tax year and the 2012 tax year up to the August 1st date of

separation.  During closing arguments, the trustee argued that the total

amount of community claims against the estate is $4,073.05.[94]  The trustee

reached the $4,073.05 amount by adding the entire 2011 tax liability

($3,026.21) to the 2012 tax liability prorated through the separation date

($1,046.84).[95]  While prorating the 2012 tax year is a reasonable method to

determine the community claim, that number could change depending on

whether the community income was earned entirely before or after the date of

separation.[96]  There is no evidence as to the specific times the 2012 income was

earned and who earned it.  Therefore, the total community claim could range

anywhere from $3,026.21 to $4,831.11 depending on the amount of the 2012

---

[93] *Id.*

[94] (A.P. Dkt. # 62 at 88-89).

[95] (A.P. Dkt. # 62 at 88-89).

[96] *See* 6 California Family Law Practice & Procedure 2d ed. § 216.31 (2026); 19 California Forms of Pleading and Practice Annotated § 227.19 (2026).

tax year attributable to the community estate. Even so, the range is *de minimis* given the figures and will not change the result here. For simplicity's sake, the Court will use the trustee's prorated figure of $4,073.05,[97] which is a secured claim. The remaining question is whether the ability to pay $4,073.05 in community claims from the sale of the $750,000 Property is inconsequential to the estate.[98]

> 2. *A partial payment of Claim 3-1 is of insufficient value or benefit to the estate to warrant turnover of the Property.*

As a threshold issue, the community claims the trustee could pay appear to be secured claims, which the trustee should not be seeking to pay at all. Even if the claims were unsecured, the Court concludes that the value to the estate would be inconsequential, especially when considering the significant administrative costs[99] the estate would incur to administer the asset. Either of these conclusions would be sufficient to deny turnover.

> a) <u>The trustee should not act as a liquidating agent for secured creditors.</u>

The chapter 7 trustee is a fiduciary of the estate "whose principal duty is to administer estate property so as to maximize distribution to *unsecured*

---

[97] The Court's math is slightly different possibly due to the trustee not including the extra day for the leap year of 2012, or due to rounding issues. Regardless, the difference is only a few dollars and is immaterial.

[98] 11 U.S.C. § 542(a).

[99] 11 U.S.C. § 503.

*creditors*, whether priority or general unsecured."[100]   While the Court is mindful of the trustee's duty to liquidate assets, that duty is not without its limits.[101] "In certain situations, *such as when liquidation will result in little to no payment to the unsecured creditors*, the proper course of action is for a trustee to abandon the property pursuant to § 554."[102]

A comprehensive review of the distribution scheme of § 726 reveals that "distributions by the Chapter 7 trustee are generally to be limited to only creditors having an allowed priority or non-priority unsecured claim[ ] against the estate."[103] "Clearly, the Code never contemplated that a Chapter 7 trustee should act as a liquidating agent for secured creditors who should liquidate their own collateral."[104] Therefore, the trustee should pursue turnover only for the purpose of providing a payout to unsecured creditors, as "secured creditors in a chapter 7 are protected by their liens."[105]

In limiting trustees' powers to liquidate encumbered assets where little to no equity is available for unsecured creditors, courts have considered the

---

[100] *In re All Island Truck Leasing Corp.,* 546 B.R. 522, 532 (Bankr. E.D.N.Y. 2016) (emphasis added).

[101] *Talbert v. City Mortg. Servs. (In re Talbert)*, 268 B.R. 811, 819 (Bankr. W.D. Mich. 2001) ("[A] Chapter 7 trustee's duty is not to administer all of the assets in which the debtor has a legal or equitable interest for the benefit of all parties who may have an interest in these assets. Rather, the Chapter 7 trustee's duty is to reduce to money the legal or equitable interests owned by the debtor in these various assets so that the proceeds may be distributed to unsecured creditors in accordance with Section 726."), *aff'd*, 344 F.3d 555 (6th Cir. 2003).

[102] *Jubber v. Bird (In re Bird)*, 577 B.R. 365, 375 (B.A.P. 10th Cir. 2017) (emphasis added).

[103] *In re Talbert*, 268 B.R. at 815.

[104] *In re Feinstein Family P'ship*, 247 B.R. 502, 507 (Bankr. M.D. Fla. 2000).

[105] *In re Ricca*, 626 B.R. 406, 420 (Bankr. E.D. Pa. 2021).

26

history of bankruptcy law.  One court has noted that "even in the face of court rulings condemning such practices, Congress noticed that 'some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions.'"[106]  In response, Congress added abandonment provisions to the Bankruptcy Code, which remain codified in § 554, providing, in pertinent part, "After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."[107]

At trial, the chapter 7 trustee testified that he is subject to the guidelines of the U.S. Trustee Handbook.  The handbook specifically provides:

> Generally, a trustee should not sell property subject to a security interest unless the sale generates funds for the benefit of unsecured creditors. *A secured creditor can protect its own interests in the collateral subject to the security interest.*[108]

Though the handbook is not binding on this Court, it "is a valuable source of guidance because it is prepared by the Executive Office of the U.S. Trustee Program [part of the Department of Justice], which was created 'to promote the integrity and efficiency of the bankruptcy system for the benefit of all

---

[106] *In re Bird*, 577 B.R. at 376 (quoting *Morgan v. K.C. Machine & Tool Co. (In re K.C. Machine & Tool Co.)*, 816 F.2d 238, 246 (6th Cir. 1987)).

[107] 11 U.S.C. § 554(a).

[108] Executive Office for U.S. Trustees, *Handbook for Chapter 7 Trustees, Effective October 1, 2012*, U.S. Department of Justice, at 4-16 (amended January 23, 2026), https://www.justice.gov/ust/private-trustee-handbooks-reference-materials/chapter-7-handbooks-reference-materials (last visited May 29, 2026) (emphasis added).

stakeholders—debtors, creditors, and the public.'"[109]  The instructions in the handbook on this issue comport with case law[110] and the provisions of the Bankruptcy Code making clear that chapter 7 trustees should not act as liquidating agents for secured creditors whose rights are protected by their liens unless such liquidation would create a meaningful distribution for unsecured creditors.

Here, the only filed community claim that the trustee can pay from the sale of the Property is a $4,073.05 secured tax claim (after paying off the mortgagee, who did not even bother to file a claim in the bankruptcy case). Despite the taxing authority already being protected by its lien, the trustee is pursuing turnover of a secured asset that will not generate funds for the benefit of unsecured creditors.  This alone is sufficient to deny turnover.

---

[109] *In re Bird*, 577 B.R. at 376 (quoting Executive Office for U.S. Trustees, *United States Trustee Program Strategic Plan & Mission*, U.S. Department of Justice (updated November 26, 2025), https://www.justice.gov/ust/program-mission (last visited May 29, 2026)).

[110] *See, e.g.*, *Sw. Sec., FSB v. Segner (In re Domistyle, Inc.)*, 811 F.3d 691, 699 (5th Cir. 2015) (citing *In re Pearson Indus., Inc.*, 178 B.R. 753, 761 (Bankr. C.D. Ill. 1995) ("A Chapter 7 trustee in bankruptcy represents the interest of the unsecured creditors and not the secured creditors. . . . A Chapter 7 Trustee should not act as a mere conduit for the benefit of secured creditors only."); *In re Feinstein Family P'ship*, 247 B.R. at 507 ("However, the interests of secured creditors by the very nature of the interest is diametrically opposed to the interest and is totally antagonistic to the interests of the general unsecured creditors. Clearly, the Code never contemplated that a Chapter 7 trustee should act as a liquidating agent for secured creditors who should liquidate their own collateral.").

28

b) <u>The Property's value to the estate is inconsequential compared to the administrative costs.</u>

The handbook further instructs trustees to consider the impact of administrative costs in relation to the distribution to be made to unsecured creditors.  It provides:

> A trustee shall not administer an estate or an asset in an estate where the proceeds of liquidation will primarily benefit the trustee or the professionals, or unduly delay the resolution of the case. The trustee must be guided by this fundamental principle when acting as trustee. Accordingly, the trustee must consider whether sufficient funds will be generated to make a meaningful distribution to unsecured creditors, including unsecured priority creditors, before administering a case as an asset case. [111]
>
> . . . .
>
> Trustees should not only consider the commission earned on a sale of estate property in relation to the anticipated distribution to unsecured creditors but also take into account all expenses incurred by the estate such as professional fees, even tax liabilities associated with a sale because professional fees are an unsecured creditor priority claim. The distribution to creditors should be meaningful.[112]

Here, the sale of the Property is expected to yield around $500,000 of equity to pay around $4,000 of secured community claims.  It cannot and will not pay any unsecured claims.  After payment of the trustee's statutory compensation, special counsel's fees for litigating this adversary proceeding, a

---

[111] Executive Office for U.S. Trustees, *supra* note 108, at 4-1.
[112] *Id.* at 4-16.

real estate broker's commission, closing costs, and carrying costs,[113] administrative costs will likely exceed six figures. This means the cost to sell the Property would likely exceed the amount paid to claimants by a factor of at least 25 to 1. Those administrative costs benefit only the professionals, while providing no benefit to the estate. And by doing this, a non-debtor third party is removed from her home. The administrative costs would be unnecessarily incurred, as the trustee would merely be acting as a liquidating agent for the taxing authority, which is protected by its lien on the Property.[114]

A distribution of much less than one percent of the value of the asset is inconsequential in this case, especially when the only creditor to be paid is secured and could protect its own rights in the Property.

### 3. Trustee's citations to In re Herrera and In re Anne Peterson do not support turnover.

The main cases cited by the trustee are the out-of-circuit cases of *In re Herrera*[115] and *In re Anne Peterson*.[116] While the Court may consider cases from other circuits, "[o]ut-of-circuit opinions are, at best, persuasive authority,

---

[113] For example, the estate could incur costs for utilities, insurance, lawn care, security, etc. in the interim between turnover and sale of the Property.

[114] *In re Ricca*, 626 B.R. 406, 420 (Bankr. E.D. Pa. 2021).

[115] *Pons v. Herrera (In re Herrera)*, Bankr. No. 16-02852, A.P. No. 16-90131, 2017 WL 5473768 (Bankr. S.D. Cal. Nov. 13, 2017), *aff'd*, No. 17-CV-2392, 2018 WL 2229369 (S.D. Cal. May 16, 2018).

[116] *In re Anne Peterson*, No. 11-BK-60846 (Bankr. C.D. Cal. Dec. 6, 2018).

not binding precedent."[117]  More importantly, *Herrera* and *Anne Peterson* are not here persuasive because neither case directly considers turnover or the inconsequential value element of § 542.  Both cases concern motions to sell community property, which is a procedural posture well beyond the turnover stage—highlighted by the absence of any citation to § 542 in either case.[118]

In *Herrera*, turnover was never at issue because the trustee did not file a complaint seeking turnover.[119]  The court granted the trustee's motion to sell community property after no objection from the debtor and a limited objection by the non-filing spouse, requesting payment from the net sale proceeds for unpaid domestic and child support owed by the debtor.[120]  In *Anne Peterson*, a complaint seeking turnover was filed by the trustee in an adversary proceeding,[121] but the defendant failed to respond to the trustee's summary

---

[117] *United States v. Traweek*, No. H-13-712, 2025 WL 1490306, at *3 (S.D. Tex. May 23, 2025) (citing *Garcia* v. *Amfels, Inc.*, 254 F.3d 585, 588 (5th Cir. 2001)).

[118] *Pons v. Herrera (In re Herrera)*, Bankr. No. 16-02852, A.P. No. 16-90131, 2017 WL 5473768; *In re Anne Peterson*, No. 11-BK-60846 (Bankr. C.D. Cal. Dec. 6, 2018).

[119] *In re Herrera*, No. 16-02852 (Bankr. S.D. Cal. May 11, 2016); *see In re McCray*, No. 14-10124, 2018 WL 6422719, at *2 (Bankr. W.D. La. Dec. 4, 2018) ("It is settled law in the Fifth Circuit that a request for turnover of property or money from non-debtor third parties must be made by an adversary complaint instead of a motion.") (citing *Hinsley v. Boudloche (In re Hinsley)*, No. 97-20967, 1998 WL 414302, at *11 (5th Cir. July 15, 1998) ("Rule 7001 of the Bankruptcy Rules provides that an action by the Trustee against a third party for turnover relief pursuant to § 542 constitutes an adversary proceeding.").

[120] Order Approving Trustee's Motion to Sell Real Property Free and Clear of Liens, *In re Herrera*, No. 16-02852-MM7 (Bankr. S.D. Cal. May 11, 2016), Dkt. # 77.

[121] *Krasnoff v. Ronald Peterson*, Bankr. No. 11-BK-60846, A.P. No. 17-AP-01505 (Bankr. C.D. Cal. Oct. 19, 2017).

judgment motion.[122] The court granted that motion in an order that contained no analysis of inconsequential value or the turnover elements under § 542(a).[123]

The trustee's arguments, as shown by his reliance on *Herrera* and *Anne Peterson*, have generally centered on whether the Property has value, but again, that is not the question. At the turnover stage, which the trustee is seeking now, § 542 asks not whether property has value, but whether "such property is of inconsequential value or benefit *to the estate*."[124] Again, this Property is certainly valuable, but is of inconsequential value to the estate because the amount that could be paid to creditors is too low and the costs to get there are too high. *Herrera* and *Anne Peterson* are simply not applicable because of the posture of this case.

> 4. *The trustee's expert witnesses were excluded because they would have been unhelpful.*

At trial, the trustee asked the Court to reconsider its earlier order excluding attorneys D. Edward Hays and William M. Hulsy as expert

---

[122] Chapter 7 Trustee's Motion for Summary Judgment on First, Third, and Fifth Claims for Relief, *Krasnoff v. Ronald Peterson (In re Anne Peterson)*, Bankr. No. 11-BK-60846, A.P. No. 17-AP-01505 (Bankr. C.D. Cal. Oct. 19, 2017), Dkt. # 49.

[123] Order Granting Chapter 7 Trustee's Motion for Summary Judgment on First, Third, and Fifth Claims for Relief, *Krasnoff v. Ronald Peterson (In re Anne Peterson)*, Bankr. No. 11-BK-60846, A.P. No. 17-AP-01505 (Bankr. C.D. Cal. Oct. 19, 2017), Dkt. # 65. On July 12, 2018, the court entered a Memorandum of Decision Denying Motion for Reconsideration (Dkt. # 96) that denied defendants' motion for reconsideration for lacking merit. The memorandum opinion again contained no analysis on inconsequential value or the elements of turnover.

[124] 11 U.S.C. § 542(a) (emphasis added).

witnesses.[125] The Court denied that request in an oral bench ruling at trial, and memorializes and supplements that bench ruling here because one reason for exclusion of the witnesses bears on the turnover issue.

Prior to the pre-trial conference, the trustee filed his Unilateral Pretrial Statement and Order, which proposed to offer, *inter alia*, expert testimony and corresponding reports from (1) Lonn Apfel, a California Certified Appraiser, (2) D. Edward Hays, Esq., a California Certified Bankruptcy Law Specialist, and (3) William M. Hulsy, Esq., a California Certified Family Law Specialist. At the pre-trial conference, and in the subsequent Order on Motion to Strike,[126] the Court allowed the testimony of the appraiser Apfel but disallowed attorneys Hays and Hulsy as expert witnesses.

Federal Rule of Evidence 702[127] permits admission of expert testimony in the form of an opinion if its proponent demonstrates the following elements:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[128]

---

[125] (A.P. Dkt. # 52).
[126] (A.P. Dkt. # 52).
[127] Federal Rule of Bankruptcy Procedure 9017 provides, "The Federal Rules of Evidence . . . apply in a bankruptcy case."
[128] Fed. R. Evid. 702.

"The ultimate inquiry is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact."[129]

"The party offering the testimony bears the burden of establishing its admissibility by a preponderance of the evidence."[130]  "[T]he Federal Rules of Evidence 'assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"[131]  The Court's analysis is not limited to the arguments asserted by the parties, but "extends to 'all aspects of an expert's testimony.'"[132]  Thus the Court may "evaluate expert testimony *sua sponte* and exclude such testimony where appropriate . . . ."[133]

The Court of Appeals for the Fifth Circuit has been clear, "Experts cannot 'render conclusions of law' or provide opinions on legal issues."[134]  This is because "our legal system reserves to the trial judge the role of deciding the

---

[129] *In re USA Promlite Tech. Inc*, No. 18-36893, 2022 WL 5224246, at *3 (Bankr. S.D. Tex. Oct. 5, 2022) (citing *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)).

[130] *Ramos v. Hartford Accident & Indem. Co.*, No. 23-CV-235, 2025 WL 1890678, at *1 (S.D. Miss. July 8, 2025) (citing *United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015)).

[131] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)); *see also Kovaly v. Wal-Mart Stores Tex., L.L.C.*, 627 F. App'x 288, 290 (5th Cir. 2015) (holding that the trial court serves a gatekeeping function to ensure that an expert's testimony complies with Fed. R. Evid. 702).

[132] *State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, No. 16-CV-2255, 2023 WL 8606773, at *13 (N.D. Tex. Dec. 12, 2023) (quoting *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007)).

[133] *Accident Ins. Co. v. Classic Bldg. Design, LLC*, No. 11CV33KS, 2012 WL 3913090, at *14 (S.D. Miss. Sept. 7, 2012), *aff'd*, 539 F. App'x 465 (5th Cir. 2013) (quoting *Brenord v. Catholic Med. Ctr.*, 133 F. Supp. 2d 179, 188 n.4 (E.D.N.Y. 2001) (citing *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998)).

[134] *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)).

law. . . ."[135] To allow an expert to "give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."[136] Further, attempts to offer legal opinions on state law and "how it would be applied is not permitted."[137] The Rule 702 standards are intended to ensure that expert testimony would help the trier of fact and "[d]ressing up an attorney's arguments as expert opinions is unhelpful and unfairly prejudicial."[138]

Counsel for the trustee confirmed in the pretrial hearing that Messrs. Hays and Hulsey were being offered as experts to provide opinions on legal issues and conclusions of law. Trustee's counsel represented, "Mr. Hays is qualified to testify on the manner in which federal bankruptcy courts analyze what value to ascribe the share of community property proceeds that is allocable to the Debtor's estate and to the Defendant non-filing spouse,"[139] and "Mr. Hulsy is qualified to testify, under principles of federalism and concurrent jurisdiction, how a California family court would allocate the share of

---

[135] *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997).

[136] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[137] *In re Pearl Res. LLC*, No. 20-31585, 2023 WL 8642303, at *13 (Bankr. S.D. Tex. Dec. 13, 2023).

[138] *Ramos v. Hartford Accident & Indem. Co.*, No. 23-CV-235, 2025 WL 1890678, at *7 (citing *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 449 (5th Cir. 1990) ("[W]hether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier.") (quoting Fed. R. Evid. 702 Advisory Committee Notes)).

[139] (A.P. Dkt. # 54 at 22).

35

community property proceeds between the Debtor's estate and to the Defendant non-filing spouse."[140]

The trustee is represented by able California counsel who is capable of the same advocacy that Mr. Hays or Mr. Hulsy would have offered with regard to California law, bankruptcy law, and any crossover between them. Their testimony would have been unhelpful to the Court, which can form its decisions on the basis of the evidence, arguments of counsel, and its own independent examination of legal authorities.[141] The Court does not need an expert to educate it on bankruptcy law. Further, any testimony related to Mr. Hulsy's hypothetical of how a California court would allocate community property proceeds between the debtor's estate and the defendant would have been purely speculative and immaterial. A guess as to how a divorce court might have divided the Property would have been of no moment in this turnover action because the parties were not divorced and the Property was community property on the petition date, at which time the state of the title of the Property was fixed for purposes of the bankruptcy case.[142]

---

[140] (A.P. Dkt. # 54 at 22).

[141] *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 713 (5th Cir. 1999) (quoting *Curtis v. Beatrice Foods Co.*, 481 F. Supp. 1275, 1285 (S.D.N.Y. 1980)*, aff'd mem.*, 633 F.2d 203 (2d Cir. 1980)).

[142] *See Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 967 (5th Cir. 2012) ("Section 541(a) of the Bankruptcy Code, which limits the debtor estate to interests of the debtor 'as of the commencement of the case.'"); *Dumas v. Mantle (In re Mantle)*, 153 F.3d 1082, 1085 (9th Cir. 1998) ("For purposes of § 541(a)(2), all community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate.").

## IV.    <u>CONCLUSION</u>

The trustee has failed to meet his burden to show that the Property is not of inconsequential value or benefit to the estate, which is an essential element of the trustee's turnover claim under § 542 of the Bankruptcy Code. A separate judgment will be entered in favor of the defendant pursuant to Federal Rule of Bankruptcy Procedure 7058.

##END OF ORDER##